# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.: 6:25-CR-00227-01** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **MATTHEW REARDON** | * | **MAGISTRATE WHITEHURST** |

---

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BILL OF INFORMATION (REC. DOC.16)

---

Respectfully submitted,

ZACHARY A. KELLER
United States Attorney


*/s/LaDonte A. Murphy*
LADONTE A. MURPHY, La. Bar No. 31272
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   QUESTION PRESENTED ............................................................................. 1

III.  STATEMENT OF THE CASE ........................................................................ 2

IV.   STATEMENT OF FACTS ............................................................................. 4

V.    ARGUMENT .................................................................................................. 8

    A.    Only the Facial Challenge is ripe for adjudication pre-trial. ........................ 8

    B.    41 C.F.R. § 102-74.390 Is Constitutional on Its Face ..................................... 10

        1.    Framework: Traditional, Designated, and Nonpublic Forums ................... 10

        2.    Courthouse Interiors Are Nonpublic Forums ............................................ 11

        3.    Section 102-74.390 Is Content- and Viewpoint-Neutral............................ 15

    C.    The Regulation Is Constitutional as Applied to Defendant ........................... 16

        1.    The Government's Compelling Interests in Courthouse Security
           and Order ................................................................................................... 16

        2.    Defendant's Conduct Directly Interfered with Those Interests ................. 18

    D.    Defendant's Selective and Vindictive Prosecution Claims Fail .................... 18

        1.    Legal Standards for Selective Prosecution................................................. 19

        2.    Legal Standards for Vindictive Prosecution .............................................. 20

        3.    Defendant Cannot Meet Either Burden...................................................... 20

VI.   CONCLUSION............................................................................................... 21

# Table of Authorities

## Federal Cases

*Adderley v. Florida*,
    385 U.S. 39 (1966) ...................................................................... 11, 15, 17

*Blackledge v. Perry*,
    417 U.S. 21 (1974) ...................................................................... 20

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) .................................................................... 21

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*,
    561 U.S. 661, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010) ....................................... 15

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
    Inc., 473 U.S. 788 (1985) ........................................................... 11, 12, 14

*Cox v. Louisiana*,
    379 U.S. 559 (1965) .................................................................... 17

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .................................................................... 16

*Greer v. Spock*,
    424 U.S. 828 ......................................................................... 11

*Hodge v. Talkin*,
    799 F.3d 1145, (D.C. Cir. 2015) ................................................... 13, 14

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2005) ......................................................... 12, 17

*Initiative & Referendum Inst. v. U.S. Postal Serv.*,
    685 F.3d 1066 (D.C.Cir.2012) ......................................................... 14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ................................................................ 10, 11

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) .................................................................... 16

*Sefick v. Gardner*,
    164 F.3d 370 (7th Cir. 1998) ......................................................... 12

*United States v. Armstrong*,
    517 U.S. 456 (1996) ............................................................ 18-19, 19

*United States v. Cruscial,*
  2019 WL 1087150 .............................................................. 3

*United States v. Fontenot,*
  665 F.3d 640 (5th Cir. 2011) .............................................. 2, 8

*United States v. Goodwin,*
  457 U.S. 368 (1982) ......................................................... 20

*United States v. Grace,*
  461 U.S. 171 (1983) ................................................. 12, 14, 15

*United States v. Johnson,*
  577 F.2d 1304 (5th Cir.1978) ............................................... 9

*United States v. Kokinda,*
  497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality opinion) ......... 14

*United States v. Lawrence,*
  2018 WL 934858 ............................................................. 3

*United States v. Pope,*
  613 F.3d 1255 (10th Cir. 2010) ............................................. 8

*United States v. Marcavage,*
  609 F.3d 264 (3d Cir. 2010) ................................................ 9

*United States v. Zagorovskaya,*
  628 F. App'x 503 (9th Cir. 2015) ........................................... 3

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ....................................................... 15

*Wayte v. United States,*
  470 U.S. 598 (1985) ....................................................... 19

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.: 6:25-CR-00227-01** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **MATTHEW REARDON** | * | **MAGISTRATE WHITEHURST** |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BILL OF INFORMATION (REC. DOC.16)**

## I.    INTRODUCTION

NOW COMES the United States of America, by and through counsel, Zachary A. Keller, United States Attorney for the Western District of Louisiana, and LaDonte A. Murphy, Assistant United States Attorney, in opposition to the defendant's Motion to Dismiss the Bill of Information filed into the record as (Rec. Doc. 16).

## II.    QUESTION PRESENTED

While the defendant frames his objections to the Bill of Information filed against him under an overarching umbrella of generalized First Amendment violations, his actual claims amount to three underlying legal questions:

1. Whether 41 C.F.R. § 102-74.390, which makes it unlawful for any person who enters in or on the Federal property, including a Federal Courthouse, from loitering, the making loud or abusive noise, obstructing entrances and exits, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots, or engaging in disorderly conduct within federal facility, is facially unconstitutional under the First Amendment of the United States Constitution?

2. Whether 41 C.F.R. § 102-74.390 is unconstitutional as applied to the defendant.

3. Whether the government's enforcement of 41 C.F.R. § 102-74.390 is an improper act of vindictive or selective prosecution aimed at suppressing the defendant's speech?

Though the defendant seeks dismissal on all three grounds, only his facial challenge may be addressed before a trial on the merits. That is because whether an indictment may be dismissed prior to trial "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (cleaned up). If the claim is fact dependent the court would have to hold an evidentiary hearing or more efficiently hold the trial on the merits. Here the last two claims are heavily fact dependent and are therefore premature for adjudication pretrial.

## III.    STATEMENT OF THE CASE

The United States has charged the defendant by Bill of Information with violating 41 C.F.R. § 102-74.390, a regulation promulgated by the General Services Administration ("GSA") to ensure safety, order, and accessibility in federally owned and managed properties. Section 102-74.390 prohibits, among other things, loitering, the making of loud or abusive noise, obstructing entrances and exits, and engaging in disorderly conduct within federal facilities. The defendant now moves to dismiss the bill of information, asserting that § 102-74.390 is unconstitutional both on its face and as applied to him. He also contends that this prosecution represents impermissible selective or vindictive enforcement of the law.

The government opposes the motion to dismiss the Bill of Information. Section 102-74.390 is a content-neutral, viewpoint-neutral regulation that addresses conduct,

not speech. It is consistent with the First Amendment as applied to the nonpublic forum of a Federal Courthouse lobby and related areas. The regulation is narrowly tailored to advance the government's compelling interest in ensuring the security, order, and functioning of judicial proceedings, and the provision has withstood constitutional challenges. See *United States v. Cruscial*, 2019 WL 1087150, p. 4 (D. Or. Mar. 7, 2019) (noting, with regard to a constitutional challenge of Section 102-74.390(b), that a "person of ordinary intelligence would understand that significant and persistent interference with the ingress and egress of human and vehicle traffic on federal property constitutes an unreasonable obstruction of the usual use of government entrances, offices, and parking lots. Defendants are free to contest the application of these regulations to their actions at trial; this does not alter the fact that § 102-74.390(b) clearly prohibits the conduct alleged in this case. As such, defendants' overbreadth, and facial and as applied void for vagueness challenges, fail.); see also *United States v. Lawrence*, 2018 WL 934858, p. 3-5 (D. Nev. Feb. 16, 2018) (upholding the constitutionality of § 102-74.390(b) on facial constitutional challenges of being overbroad and void for vagueness); see also *United States v. Zagorovskaya*, 628 F. App'x 503, 504 (9th Cir. 2015) (holding that the "nuisance prohibition in 41 C.F.R. § 102–74.390(a), which applies only to persons 'entering in or on [f]ederal property,' is not overbroad in violation of the First Amendment).

Moreover, defendant's claims of selective/vindictive prosecution lack evidentiary support and fail under controlling Supreme Court precedent. For these reasons, the motion to dismiss should be denied.

## IV.   STATEMENT OF FACTS

The trial evidence will show that the Federal Courthouse at issue in this case is the John M. Shaw Federal Courthouse building located in Lafayette, Louisiana. The property, including the building itself, its interior spaces, and adjacent parking lots and sidewalks, constitute federal property owned and managed by the General Services Administration (GSA) under the authority of the Department of Homeland Security.

**Signage and Standing Orders.** Prominent signs are posted at multiple entry points, including parking lots, sidewalks, and exterior doors, notifying visitors that certain activities are prohibited on federal property. These include filming, photography, use of recording devices, loitering, and the creation of loud or offensive noise. In addition, the judges of this district have adopted a standing order prohibiting the use or possession of cell phones, cameras, or other recording devices within the courthouse. [*See Standing Order 1.93 of the WDLA*]. The order is posted on the court's website and enforced by courthouse security officers and the United States Marshals Service.

**Courthouse Layout.** The courthouse is surrounded by several surface parking lots and bordered by sidewalks. A prominent series of stairs lead to the main entrance. Two concrete statues depicting Lady Justice flank the stairs, which rise to a portico. This portico serves as a transitional space to the interior, where multiple glass doors function as both public entryways and emergency exits. Inside, the lobby connects to a general atrium leading to administrative offices of the United States

Bankruptcy Court, the United States Marshal Office, the United States Attorney's Office, the United States Probation Office, and the Clerk of Court's Office, as well as the main elevators leading to the courtrooms. The lobby is regularly traversed by judges, attorneys, jurors, litigants, witnesses, and members of the public, and thus serves as a critical passageway for the functioning of the courts.

First Incident: On June 23, 2025, defendant arrived at the John M. Shaw Federal Courthouse carrying both a cell phone and a camcorder. Security officers advised him that recording devices were not permitted on federal property and directed him to stop recording and return the devices to his vehicle. Defendant refused, insisting he had the right to record. Officers explained the prohibition again, referencing posted signage and the standing order. Defendant stated he was at the courthouse to "stress test the system," a phrase the meaning of which was unclear to officers. Because of his refusal to comply and his cryptic comments, the Marshals Service identified him as a person of concern and began reviewing his background to assess potential risks to courthouse safety.

Second Incident: On June 26, 2025, defendant returned to the courthouse with recording devices again. He was once more advised of the prohibition. He refused compliance and recorded security personnel during the exchange. He was told explicitly that loitering in the lobby, recording on federal property, and creating disturbances were prohibited and that further violations could result in enforcement action.

Third Incident: On August 25, 2025, defendant returned a third time. The defendant began his protesting on the sidewalk and beyond the barricades, and while climbing on the concrete around the building. This did not pose a risk, and therefore the United States Marshals Service or Court Security Officers did not interfere with this protest. The Marshals Service and Court Security Officers were conversing inside and watching the defendant protest when the defendant interpreted a hand motion or signal to mean that he was being called into the building. The defendant came in filming, and he was admonished by the Marshal's Service to stop filming inside the courthouse. The defendant realized there was no need to be inside the building, and he returned outside to continue his protest. It is important to note an arrest was not made at this point, and the defendant was allowed to continue to protest outside the courthouse.

On this third visit and at this point, the defendant stood directly in front of an entrance doorway, physically blocking ingress and egress, and held a protest sign against the glass of the door as indicated in Defense Exhibit 2. At this point on this third visit, the defendant then moved a tripod and camera, set it up directly in front of one of the available emergency exits, and began recording as indicated in Government Exhibit 3. This camera or recording device was pointed inside the courthouse and was filming activity inside the courthouse, despite numerous previous admonishments to not record inside the courthouse.

During this third visit, the defendant continued to display hand-written signs and attempted to picket, parade, and protest his prior encounters with the Marshals

Service within the portico and lobby areas, all while filming. He directed loud, profane, and abusive language toward Deputy Marshals and courthouse staff, drawing attention from employees of one of the courthouse tenants and members of the public. He continued to point a camera inside the courthouse and film activity inside the courthouse, despite previous warnings not to do so.

Ultimately, the Marshal's Service could not allow the defendant to obstruct the entrance way, or the emergency exit, and could not allow the continued recording of activity inside the courthouse by the camera and tripod set up and blocking the emergency exit. The Marshal Service exited the building to advise the defendant that he had to move the camera and tripod. The defendant's motion indicates he complied immediately, but this is not accurate as illustrated by the video linked within the defendant's own motion. Rec. Doc. 16-1, FN 4. Rather than comply immediately as indicated, when initially asked to move the tripod and camera, the defendant told the Marshals Service "you need to suck my dick," and continued to yell profanities and refused to move the tripod and camera.

After further verbal commands, the defendant eventually moved the cameral back slightly, but the camera and tripod were still close enough to continue to film inside the courthouse and would have obstructed foot traffic into or out of the courthouse if left recording at that location. The Marshals Service gave repeated warning to move the camera and tripod or it would be seized. The defendant continued to yell profanity, and the Marshal Service began to count down and let the defendant know the camera and tripod would be seized if not moved beyond the

barricade at the end of the final countdown or grace period.  The defendant still refused, and the Marshal Service went to seize the camera and tripod, and the defendant intervened and contact was made between the parties.  It was at this point defendant was placed under arrest by the Marshals Service for violating § 102-74.390's prohibitions on loitering, making loud and offensive noise, obstructing entrances, and engaging in disorderly conduct on federal property.

Throughout this process the defendant claims to be an "independent journalist" testing the limits of government authority. Regardless of that self-characterization, his conduct interfered directly with the safe and orderly operations of the Federal Courthouse, including obstructing emergency exits, disregarding security orders, filming or live streaming the interior of the courthouse, and creating disturbances in a space where court business must proceed undisturbed.

## V.    ARGUMENT

### A. Only the Facial Challenge is ripe for adjudication pre-trial.

As noted above, though the defendant seeks dismissal on three grounds, only his facial challenge may be addressed before a trial on the merits.  The government contends whether an indictment may be dismissed prior to trial "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (cleaned up).  If the ground for dismissal concerns a pure question of law, "then consideration of the motion is generally proper." *Id*.; compare, *United States v. Pope*, 613 F.3d 1255, 1261-63 (10th Cir. 2010) (Gorsuch, J.) (finding an as-applied

Second Amendment challenge could not be considered pretrial where, to prevail, "disputed facts outside the indictment must be found in [defendant's] favor").

Unquestionably, the defendant's as-applied challenge involves an analysis of the statute in the light of the particular facts of this case. See *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) ("A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." (cleaned up)). A comparison of the facts set forth in the United States' and the defendant's instant filings confirms the two parties' versions vary substantially and materially. The only alternative in resolving that dispute—an evidentiary hearing— is not efficient, as it would essentially duplicate a trial on the merits. This Court should decline to consider the defendant's as-applied challenge until after the trier of fact has resolved the relevant factual disputes.

Similarly, the defendant's selective or vindictive prosecution claim turns on the facts of his particular case. *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir.1978) (requiring the court to consider, among other things, whether the prosecution was motivated by improper considerations including the desire to prevent the execution of a constitutional right). Once more, the parties' versions of the facts relevant to this claim vary widely, and the defendant could use a trial on the merits to (at least partially) attempt to develop a record on that claim.  And again, the

alternative—a time-consuming and at least partially duplicative evidentiary hearing—would be far from judicially efficient.

Thus, this Court should decline to consider any issue at this time except the facial validity of the statute at issue, subject to the defendant's later right to litigate the issue in the light of facts as found by the Court at trial.

## B. 41 C.F.R. § 102-74.390 Is Constitutional on Its Face

Defendant contends that § 102-74.390 is facially unconstitutional under the First Amendment. That contention is mistaken. The regulation is a permissible exercise of the government's authority to regulate conduct in nonpublic forums. It is neutral as to content and viewpoint, narrowly tailored to protect significant governmental interests, and leaves open ample alternative channels of communication.  As an example, the defendant did in fact picket and protest outside the courthouse for an extended period of time without violating the regulation.

### 1.  Framework: Traditional, Designated, and Nonpublic Forums

It should be noted that chief among disputes between defense and the government is the defendant's faulty premise that the federal courthouse is a "traditional public forum. The Supreme Court has long held that the First Amendment's protections for expressive activity vary depending on the forum in which the activity occurs. See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46 (1983). Three categories of forums exist:

1. Traditional public forums—such as streets, parks, and sidewalks traditionally open to expressive activity. Regulations of speech in these areas must be narrowly tailored to serve a compelling governmental interest if content-based,

or must be reasonable time, place, and manner restrictions if content-neutral. *Id*.

2. Designated public forums—government property that the government has opened for expressive activity. Regulations are subject to the same scrutiny as traditional public forums while the designation remains in effect. *Id*.

3. Nonpublic forums—all remaining government property not traditionally or by designation opened to public expression. In these spaces, restrictions need only be reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. *Id*. at 46; *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

This framework acknowledges that "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida*, 385 U.S. 39, 47 (1966).

## 2. Courthouse Interiors Are Nonpublic Forums

Courthouse lobbies, foyers, entrances, elevators, and office spaces are paradigmatic nonpublic forums. These spaces exist to facilitate judicial proceedings and the orderly conduct of government business, not to provide an open platform for expressive activity.

The Supreme Court has consistently recognized that not all government property is open to the public for expressive purposes. In *Adderley*, the Court upheld trespass convictions of students who protested on jail grounds, reasoning that the jail was not a public forum, and officials could regulate access to preserve order. 385 U.S. at 47–48. Similarly, in *Greer v. Spock*, 424 U.S. 828 (1976), the Court upheld restrictions on political speeches and distribution of literature at a military base, underscoring that the base was not a public forum.

Courthouses, like jails and military installations, are quintessential nonpublic forums. Multiple courts of appeals have so held. See, e.g., *Huminski v. Corsones*, 396 F.3d 53, 90–91 (2d Cir. 2005) (recognizing courthouse grounds are nonpublic forums where restrictions may be imposed to protect judicial functions); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("Courthouses are not public forums; they are dedicated to the administration of justice.").

Indeed, even *United States v. Grace*, 461 U.S. 171 (1983), which invalidated a broad ban on demonstrations on sidewalks surrounding the Supreme Court, distinguished the building's interior, which was not a public forum. *Id*. at 178. The Court emphasized that while exterior sidewalks shared characteristics of traditional public forums, the interior of the Supreme Court "is not such a forum." *Id*.

Relevant to our inquiry is whether the entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots of the John M. Shaw Federal Courthouse are public forums or a nonpublic forum. If they are not public forums then, we apply the less stringent standard for First Amendment constitutional challenges applicable to nonpublic forums. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

This exact issue came up in *Hodge v. Talkin*, 799 F.3d 1145, (D.C. Cir. 2015) where the plaintiff sought to picket, leaflet, and make speeches in the United States Supreme Court Plaza, with the aim of conveying to the Court and the public what he describes as "political messages" about the Court's decisions. The plaza contains two fountains, two flagpoles, and six marble benches. Another thirty-six steps lead from the plaza to the building's portico and "the magnificent bronze doors that are the main entrance into the building." *Id. at 38*. A low marble wall surrounds the plaza and also encircles the rest of the building. And the plaza's white marble matches the marble that makes up the low wall, the two staircases, the fountains, and the building's façade and columns.



*See description by Pamela Scott & Antoinette J. Lee, Buildings of the District of Columbia 138 (1993). Supreme Court Building, Architect of the Capitol, http://www.aoc.gov/capitol-buildings/supreme-court-building (last visited Aug. 20, 2015).*

In *Hodge*, the D.C. court of appeal said, "We find the Supreme Court Plaza to be a nonpublic forum." *Id*. The Court's analysis in *Grace* directly points the way to that conclusion. Certain sidewalks might constitute nonpublic forums if they serve specific purposes for particular public sites, such as providing solely for internal passage within those sites. See *United States v. Kokinda*, 497 U.S. 720, 727–30, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality opinion); *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1071 (D.C.Cir.2012)). The plaza's features convey in many distinctive ways that a person has "entered some special type of enclave." *Id*. at 180, 103 S.Ct. 1702. And in serving as what amounts to the elevated front porch of the Supreme Court building (complete with a surrounding railing), the plaza—like the building from which it extends, and to which it leads—is a nonpublic forum.

Therefore, under those relaxed standards with respect to a nonpublic forum, the government contends that the statute at bar meets the burden and is "reasonable," and furthers the government's interests in maintaining decorum and order in the entryway to Federal Courthouse. See *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). While the defendant's desired activities in the entrances, foyers, lobbies, corridors, of the John M. Shaw Federal Courthouse — picketing, displaying inflammatory signs, and speechmaking—lie at the core of the First Amendment's protections, he does not have an automatic entitlement to engage in that conduct wherever (and whenever) he would like.

Rather, the "Government, 'no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully

dedicated.'" *Grace*, 461 U.S. at 178, 103 S.Ct. 1702 (quoting *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)). That principle finds voice in the Supreme Court's "forum analysis," which "determine[s] when a governmental entity, in regulating property in its charge, may place limitations on speech." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010).

### 3. Section 102-74.390 Is Content- and Viewpoint-Neutral

Defendant suggests that § 102-74.390 impermissibly restricts speech. That suggestion mischaracterizes the regulation. The text of the rule makes clear that it addresses conduct—loitering, making loud or abusive noise, obstructing entrances, or otherwise engaging in disorderly or disruptive behavior on federal property. See 41 C.F.R. § 102-74.390.

The Supreme Court has long upheld content-neutral regulations of conduct in government-controlled spaces. In *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), the Court explained that a regulation is content-neutral if it is "justified without reference to the content of the regulated speech." Section 102-74.390 fits squarely within this principle. It does not single out any subject matter, message, or viewpoint. Rather, it applies equally to all persons, regardless of the content of their expression.

Moreover, the regulation is plainly viewpoint neutral. A person who obstructs an entrance while praising the government is treated no differently than a person obstructing an entrance while criticizing the government. Both violate the rule

because of the manner of their conduct, not the message conveyed. *Cf. Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995) (government may not discriminate against speech based on viewpoint).

Nor does the rule confer unbridled discretion on government officials. Its prohibitions—on loitering, making loud or abusive noise, or blocking entrances—are sufficiently clear and objective to guide enforcement and prevent arbitrary application. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972) (upholding anti-noise ordinance that gave "fair notice" of prohibited conduct). Therefore, because § 102-74.390 regulates conduct, not ideas, and does so in a content- and viewpoint-neutral manner, it is facially consistent with the First Amendment.

## C. The Regulation Is Constitutional as Applied to Defendant

While the government contends that ruling on the defendant's "as applied" challenge is improper at this time, even if the Court were to scrutinize the regulation's application here, following a full evidentiary hearing, defendant's challenge would fail. His conduct—repeatedly defying posted rules and officers' warnings, setting up recording equipment to record inside the courthouse, obstructing emergency exits, and shouting profanities—falls squarely within the regulation's prohibitions.

### 1. The Government's Compelling Interests in Courthouse Security and Order

As previously established, under the standard of reasonableness, as noted supra, in *Cornelius v. NAACP Legal Defense Fund*, the government only need demonstrate a reasonable interest in regulating the conduct regulated in the statute.

Indeed, some cases have recognized that the government's interest in courthouse security is substantial. See *Cox v. Louisiana*, 379 U.S. 559, 562 (1965). We contend that this interest extends to maintaining access to entrances and exits, preventing disruptions to judicial proceedings, and protecting judges, jurors, litigants, and the public.

Federal Courthouses present unique vulnerabilities. Unlike parks or sidewalks, courthouses house sensitive proceedings and often involve parties in adversarial conflict. Maintaining a secure and orderly environment is critical to the administration of justice. See *Huminski*, 396 F.3d at 90 (recognizing that restrictions on courthouse grounds are justified by need to ensure security and fair administration of justice).

Regulating loud or abusive noise directly serves these interests by preventing disruptions that could distract court staff, intimidate litigants, or impede judicial work. Likewise, prohibiting loitering and blocking entrances ensures that litigants, witnesses, and the public may enter and exit freely and safely.  Again, due to the areas of a courthouse lobby, foyer, portico, and entrance and exit being classified as a nonpublic forum, restrictions need only be "reasonable." *Supra*, p. 9.

The Supreme Court has repeatedly affirmed that such regulations are legitimate and necessary. See, e.g., *Cox*, 379 U.S. at 562 (upholding restrictions on picketing near courthouse to protect judicial process); *Adderley*, 385 U.S. at 47 (government may preserve its facilities for their intended purposes).

## 2. Defendant's Conduct Directly Interfered with Those Interests

The facts that can be established at trial will show the defendant's conduct directly contravened the government's interests, and the regulatory restrictions applied to these nonpublic spaces are reasonable.

1. Repeated Defiance of Posted Rules and Orders. Defendant was twice warned that recording devices and loitering were prohibited within the courthouse. His refusal to comply—under the guise of "stress testing the system"—demonstrated an intent to provoke confrontation rather than to lawfully exercise speech rights.

2. Obstruction of Entrances and Emergency Exits. By setting up a tripod camera in front of a designated emergency exit, defendant created a physical obstruction that threatened public safety and interfered with access to the building.

3. Disruptive Noise and Profane Language. Defendant shouted profanities and directed loud, abusive language toward Marshals and staff in a public lobby, disturbing both courthouse employees and members of the public conducting official business. Such conduct falls squarely within the prohibition on loud and offensive noise.

4. Escalating Conduct Despite Prior Warnings. Defendant's escalation from handheld recording devices to a tripod and camera setup, signs pressed against entrance doors and parading in and around the entrance and the lobby shows deliberate disregard for lawful orders and for the rights of others to access the courthouse.

An as-applied challenge will eventually fail after a trial of the matter. The defendant's arrest and prosecution are based not on the content of his message, but on his disruptive, unsafe, and unlawful conduct.

## D. Defendant's Selective and Vindictive Prosecution Claims Fail

Defendant also asserts that this case represents either selective or vindictive prosecution. Those claims collapse under settled Supreme Court precedent. Prosecutorial charging decisions are entitled to a "presumption of regularity." *United*

*States v. Armstrong*, 517 U.S. 456, 464 (1996). To overcome that presumption, a defendant must meet a "demanding" evidentiary burden. *Id*. at 463. Defendant falls far short.

### 1. Legal Standards for Selective Prosecution

A selective prosecution claim is not a defense to the merits of the charge but an assertion that the prosecution itself is constitutionally infirm. See, e.g., *Wayte v. United States*, 470 U.S. 598, 607 (1985). To prevail, a defendant must show:

1. Discriminatory Effect—that others similarly situated have not been prosecuted for similar conduct; and

2. Discriminatory Purpose—that the prosecution was motivated by impermissible considerations such as race, religion, or the exercise of protected rights. *Id*.; *Armstrong*, 517 U.S. at 465.

The burden is "a demanding one." *Armstrong*, 517 U.S. at 463. Courts require "clear evidence" before finding that prosecutorial discretion has been abused. *Id*. at 464 (citation omitted).

Here, defendant cannot establish either prong. He proffers no evidence that other individuals who engaged in comparable conduct—repeatedly bringing prohibited recording devices, obstructing courthouse exits and creating loud disturbances—were not prosecuted. Nor does he provide evidence that the decision to prosecute him was based on his message, viewpoint, or any impermissible factor. Instead, the record demonstrates that the government responded to his repeated violations of posted rules and warnings, his obstruction of emergency exits, and his disruptive and abusive behavior. Without proof of both discriminatory effect and purpose, his claim fails as a matter of law.

### 2.  Legal Standards for Vindictive Prosecution

Vindictive prosecution is a related but distinct claim. It arises when a prosecutor retaliates against a defendant for exercising a legal right. See *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974). To prevail, a defendant must show either (1) actual vindictiveness—that the prosecutor acted with genuine animus—or (2) circumstances giving rise to a presumption of vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 374 (1982).

Courts are reluctant to find vindictiveness in the pretrial charging context. In *Goodwin*, the Court held that no presumption arises merely because the government chooses to bring charges after a defendant asserts a procedural or constitutional right. *Id.* at 384. Only in the "post-conviction setting" do courts sometimes presume vindictiveness. *Id.* at 376–78.

Defendant has proffered no facts either actual or presumptive vindictiveness. The government's decision to prosecute arose not from retaliation but from defendant's escalating pattern of disruptive and unlawful conduct after multiple warnings. Far from punishing him for exercising rights, the government acted to protect courthouse safety and ensure compliance with law.

### 3.  Defendant Cannot Meet Either Burden

The record makes plain that defendant's prosecution stems from his conduct, not his viewpoint. He was prosecuted because he repeatedly violated clear rules governing federal property, obstructed access to emergency exits, and created loud

and abusive disturbances inside a courthouse lobby, and in and around an entrance and exit.

The defendant offers no evidence that similarly situated individuals were treated differently, nor any proof that prosecutors acted with discriminatory or retaliatory animus. The mere fact that defendant styled himself as an "independent journalist" does not immunize him from neutral rules regulating conduct in nonpublic forums. See *Branzburg v. Hayes*, 408 U.S. 665, 683 (1972) (First Amendment does not exempt journalists from generally applicable laws). Because defendant cannot satisfy the rigorous standards for selective or vindictive prosecution, these claims provide no basis to dismiss the information.

## VI.    CONCLUSION

Only a fact-based facial challenge is properly before the court prior to trial. Section 102-74.390 is a facially valid, content-neutral and viewpoint-neutral regulation governing conduct on federal property. Its application here was reasonable, narrowly tailored, and necessary to preserve the safety, order, and functioning of a Federal Courthouse. Defendant's prosecution was not selective or vindictive but the predictable result of his repeated, willful violations of lawful regulations and warnings.

For the foreground reasons, the Court should deny defendant's Motion to Dismiss the Bill of Information.


Respectfully submitted,

ZACHARY A. KELLER
United States Attorney


*/s/ LaDonte A. Murphy*
LADONTE A. MURPHY, La. Bar No. 31272
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone: (337) 262-6618