UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO:   6:25-MJ-00153 |
| | 6:25-CR-00227-CBW-1 |
| VERSUS | |
| | MAGISTRATE JUDGE WHITEHURST |
| MATTHEW REARDON | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER**

NOW INTO COURT, through the undersigned counsel, comes Defendant Matthew Reardon, who respectfully opposes the government's Motion for Protective Order (Doc. 23) and the continuation of the Interim Protective Order (Doc. 24). For the reasons set forth below, the protective order should be denied in its entirety or, alternatively, substantially narrowed to address only legitimate security concerns while preserving Mr. Reardon's constitutional rights and the public's interest in transparency.

I.   **Introduction**

The government seeks a broad protective order that would prevent Mr. Reardon—an investigative journalist with over 3,000 subscribers—from possessing copies of or even publicly discussing evidence in his own criminal case. This prosecution arose from Mr. Reardon's constitutionally protected activities: documenting his interactions with federal law enforcement and protesting what he discovered through FOIA to be unlawful surveillance of his journalism.

Now the government seeks to compound its violation of Mr. Reardon's First

Amendment rights by imposing a gag order that would prevent him from informing the public about the evidence underlying this prosecution. The very materials the government now seeks to shield from public scrutiny Mr. Reardon believes are central to understanding the government's improper motivation in bringing this case and the retaliatory nature of the prosecution.

While undersigned counsel recognizes the Court's paramount obligation to ensure courthouse security, and the specialized expertise of the U.S. Marshals Service in security matters, the government has failed to demonstrate good cause for such sweeping restrictions. Its vague assertions about courthouse security and sensitive law enforcement information cannot justify the requested relief. The protective order should be denied or substantially narrowed.

## II. Factual background

Mr. Reardon is an independent journalist who operates the "We the People News" platform, documenting government activities and advocating for government accountability. His journalistic work has consistently focused on exposing government overreach and protecting constitutional rights.

Through a Freedom of Information Act (FOIA) request, he discovered that U.S. Marshals had placed him under surveillance through a BOLO (Be On the Lookout) alert based solely on his protected journalistic activities. When he attempted to file a complaint about this surveillance at the Lafayette courthouse, he was turned away and told to contact Washington D.C.

Within the trove of FOIA documents he received from the government were numerous emails between the U.S. Marshals and courthouse staff. Two days before the events that led to this case, Mr. Reardon lawfully published the documents he received from the FOIA request on August 23, 2025, on his news website.[1] This publication included the very emails the government now seeks covered by the protective order.

On August 25, 2025, Mr. Reardon exercised his First Amendment rights by peacefully protesting this government overreach on the courthouse steps while documenting the event for his journalism platform. The government responded by arresting him and seizing his equipment. Mr. Reardon has already published video of these events on his YouTube channel, making much of the supposedly "sensitive" information public.

The government now seeks to prevent Mr. Reardon from possessing or discussing additional evidence, claiming that discovery materials contain "sensitive courthouse security operational plans" and "communications between the Marshal service and Federal Judges." (Doc. 23 at 1). The government provides no specific identification of what materials are actually sensitive or how disclosure would cause harm. More importantly, it appears that the materials referenced by the government were already released to the public via the above-referenced FOIA response and subsequent publication.

---

[1] *See* https://www.wtpnews.org/us-marshals-foia-operation-silence-the-press/.

### III. Legal authorities

#### A. Protective orders under Rule 16(d)(1)

Federal Rule of Criminal Procedure 16(d)(1) permits protective orders only upon a showing of "good cause." The party seeking the protective order bears the burden of showing good cause. *United States v. Carriles*, 654 F. Supp. 2d 557, 565-66 (W.D. Tex. 2009). Good cause exists "when a party shows that disclosure will result in a *clearly defined, specific and serious injury.*" *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (emphasis added). A finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (citations omitted).

When considering a protective order, courts must "consider whether the imposition of the protective order would prejudice the defendant" and "should seek to ensure that disclosure of discovery materials to a defendant 'involve[s] a minimum hazard to others.'" *Carriles*, 654 F. Supp. 2d at 566. Courts must also "balance the public's interest in the information against the injuries that disclosure would cause." *Id.*

#### B. The First Amendment is a relevant concern when examining a protective order

The Supreme Court has held that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (citing *Richmond Newspapers, Inc. v. Virginia*, 448

4

U.S. 555 (1980)); *see also In re Providence Journal*, 293 F.3d 1, 9 (1st Cir.2002) ("Courts long have recognized that public monitoring of the judicial system fosters the important values of quality, honesty, and respect for our legal system."). Apart from a constitutional right of access to court proceedings and documents, the Supreme Court has held that the public has a common law "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). But these constitutional protections have not been extended to discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, (1984).

Nevertheless, "[e]xamining a protective order under the framework of Rule 16(d) does not eliminate the First Amendment as a relevant concern." *Smith*, 985 F. Supp. 2d at 523 (cleaned up) (citations omitted). Rather, "the existence of the protective order confines First Amendment scrutiny, including defendant's right to disseminate the discovery material, to the framework of Rule 16(d)'s good cause requirement." *Id.*

IV.  **Argument**

  A.  **The government fails to demonstrate good cause**

The government's motion relies on generalized, speculative assertions about potential harm without identifying specific sensitive information or articulating how disclosure would create actual security risks. Based on undersigned's review of the discovery materials to date, many of the government's claims of sensitivity appear

5

overstated.

First, the government fails to acknowledge that Mr. Reardon livestreamed[2] the events in question and had already lawfully published the FOIA documents that included communications between U.S. Marshals and courthouse staff.[3] Thus, most of the facts surrounding this case are already public.

Second, the government claims the protective order is necessary for materials that "may tend to reveal the methods or operational behavior of the US Marshal in performing its courthouse security function." (Doc. 23 at 2-3). While the government is entitled to protect truly sensitive security protocols, it has not specifically identified which materials contain such information or how their disclosure would create a genuine security risk. Nor does the government claim that any particular security measure would be compromised, that any individual would be endangered, or that any ongoing operation would be jeopardized.

From counsel's review of the discovery provided thus far, the materials appear to consist primarily of:

- Mr. Reardon's own video recordings that have been published online
- Video recordings of Mr. Reardon in a U.S. Marshal holding cell and receiving medical attention
- Email communications regarding the incident that do not appear to contain detailed security protocols
- Standard incident reports documenting the interaction with Mr.

---

[2] The livestream is available on the We The People News YouTube Channel at https://www.youtube.com/live/QAv70Drwt3c?si=-KfZzJTdUqXhjeri

[3] Mr. Reardon published the documents he received from the FOIA request on August 23, 2025, on his news website. *See* https://www.wtpnews.org/us-marshals-foia-operation-silence-the-press/. This was two days before his arrest in this case.

> Reardon
> - Documents related to the BOLO alert that Mr. Reardon has already obtained through FOIA and published

While undersigned recognizes that security professionals may identify vulnerabilities not apparent to defense counsel, the government bears the burden of specifically identifying what materials require protection and why. It has not done so here.[4]

Additionally, the discovery appears to contain no personally identifiable information (PII) beyond Mr. Reardon's own information. If the Court determines that some level of protection is warranted, undersigned requests that any order be narrowly tailored to address only the specific materials that genuinely implicate security concerns, rather than the blanket restrictions requested by the government.

Third, Mr. Reardon has already published extensive video documentation of the August 25 incident on his YouTube channel, viewed by thousands. Mr. Reardon has also published records from the FOIA request showing communications to and from the U.S. marshals and courthouse staff. In fact, it appears the FOIA documents included *more* U.S. Marshal emails than the discovery documents. The government cannot claim sensitivity for information already in the public domain. Moreover,

---

[4] Undersigned is mindful that protective orders are appropriate in many situations, see *Alderman v. United States*, 394 U.S. 165, 185 (1969), and that maintaining courthouse security is a legitimate purpose for a protective order. Undersigned, however, fails to see any documents in the discovery *in this case* that disclose any operational or security information that is not already public or widely known.

courthouse security procedures are necessarily observable by the public. Every day, citizens pass through courthouse security, observe Marshal procedures, and interact with court security officers. These publicly observable procedures cannot be deemed "sensitive" merely because they are documented in discovery materials.

### B.     The public interest strongly favors transparency

This case raises fundamental questions about the boundaries of First Amendment protection for journalists at federal facilities, the use of surveillance (BOLO alerts) against citizens engaged in constitutionally protected activities, the prosecution of individuals for documenting and criticizing government conduct, and the response of federal law enforcement to accountability journalism.

The public has an overwhelming interest in understanding the evidence underlying such a prosecution. Transparency serves not only Mr. Reardon's defense but also the public's ability to evaluate whether the government is respecting constitutional boundaries.

As the Supreme Court recognized, "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978).

### C.     Less restrictive alternatives would serve any legitimate interests

Even if the government could demonstrate some need for protection, which it has not—the proposed order is far broader than necessary.

8

This Court should adopt the least restrictive means of serving governmental interests. Less restrictive alternatives could include (1) targeted redactions that remove specific sensitive information so that the documents could be released with redactions, or (2) tiered disclosure that would allow full disclosure of non-sensitive materials while restricting only materials containing demonstrable security information. The government has not explained why these less restrictive alternatives would be insufficient.

If the Court determines that some form of protection is necessary, undersigned proposes the following narrower protective order that would address legitimate security concerns while preserving Mr. Reardon's constitutional rights:

1. The government shall specifically identify which documents or portions of documents contain sensitive security information, with a brief explanation of the security concern implicated.

2. Defense counsel may challenge the designation of specific materials, requiring the government to articulate with greater specificity why those materials require protection.

3. For materials containing genuinely sensitive security information, Mr. Reardon and his counsel shall not publicly disclose the specific security protocols, contact information of security personnel, or technical details of security systems.

4. However, Mr. Reardon may discuss and possess all other evidence related to his case, including:

    a. Video recordings he made during the incident
    b. Communications related to the BOLO alert
    c. Any information already available through FOIA or other public sources
    d. The general circumstances of his arrest and prosecution

9

5. Rather than requiring all discovery to be maintained only by defense counsel, the Court could require specific security-sensitive documents to be maintained securely, while permitting Mr. Reardon to possess non-sensitive materials.

This approach would protect legitimate security interests while avoiding a restraint on Mr. Reardon's speech about his own prosecution.

## V.    Conclusion

A journalist prosecuted for documenting government conduct should not be gagged from discussing his own case. The protective order represents a continuation of the very suppression of speech that led to this prosecution. It should be denied in its entirety.

                        RESPECTFULLY SUBMITTED,

                        REBECCA L. HUDSMITH
                        Federal Public Defender

BY:   *s/ Dustin C. Talbot*
        DUSTIN C. TALBOT
        Appellate Chief
        Federal Public Defender's Office
        Middle and Western Districts of Louisiana
        102 Versailles Boulevard, Suite 816
        Lafayette, Louisiana 70501
        Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 22, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*
