UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:25-CR-00227-01** |
| **VERSUS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |
| **MATTHEW REARDON (01)** | |

## MEMORANDUM RULING

Before the Court is Defendant's *Motion for Recusal and Request for Appointment of Judge from outside the District*. (Rec. Doc. 32). The United States opposed the motion. (Rec. Doc. 35). Considering the evidence, the law, and the parties' arguments, and for the following reasons, the motion is granted insofar as Defendant seeks recusal. The matter shall be referred to another division of this District.

### Facts and Procedural History

On August 26, 2025, Reardon was charged by bill of information, with one count of loitering, exhibiting disorderly conduct or exhibiting other conduct on federal property in violation of 41 C.F.R. §102-74.390. (Rec. Doc. 3). The charge stems from Reardon's activities at the John M. Shaw Federal Courthouse on August 25, 2025, but this was not Reardon's first encounter with U.S. Marshals.

Reardon describes himself as a journalist who first engaged in what he describes as "journalistic and protest activities" at the Shaw Courthouse on June 23,

2025, and June 26, 2025. (Rec. Doc. 32, p. 2). In response to Reardon's June 23, 2025 conduct, on June 24, 2025, a deputy U.S. Marshal emailed Lafayette division judges, including the undersigned magistrate judge, a message regarding Reardon's activities at the courthouse. (Rec. Doc. 37). The email included photos of Reardon and reports relating details of CSOs' and U.S. Marshals' June 23, 2026 encounter with him.

Thereafter, Reardon returned to the Shaw Courthouse on August 25, 2025, leading to the incident which is the subject of this case. He moves to recuse the undersigned magistrate judge based primarily on the undersigned's relationship and communications with U.S. Marshals regarding him.

## Law and Analysis

28 U.S.C.A. § 455 requires any judge or magistrate judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 455(a) and (b)(1).[1]

> The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the

---

[1] The Government also cites 28 U.S.C. §144, which requires recusal where a party files a sufficient affidavit "that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." Defendant in this case did not file an affidavit and does not seek recusal under §144.

2

> impartiality of our judges and the proceedings over which they preside. Justice must satisfy the appearance of justice. This is the very purpose of 28 U.S.C. § 455(a) … The Supreme Court described the standard as whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality. The goal of section 455(a) is to avoid even the appearance of partiality. Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

*United States v. Jordan*, 49 F.3d 152, 155–56 (5th Cir. 1995) (cleaned up), citing *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 860–61, 108 S.Ct. 2194, 2203 (1988).

Reardon argues recusal under §455 is warranted for three reasons: 1) the factual circumstances presenting an objective appearance of impropriety, 2) the undersigned's daily working relationship with key government witnesses, and 3) the potential of unknown *ex parte* communications between the undersigned and courthouse personnel regarding Reardon.

The Court finds that the latter two arguments, alone, do not justify disqualification. As noted by both Reardon and the Government, a judge's routine working relationship with courthouse security personnel is insufficient to create bias or the appearance of impartiality. See e.g. *United States v. Sundrud*, 397 F. Supp. 2d 1230, 1235 (C.D. Cal. 2005); *United States v. Faul,* 748 F.2d 1204 (8th Cir.1984); *United States v. Ramsey,* 871 F.2d 1365 (8th Cir.1989); and *United States v. Jacobs*, 311 F. App'x 535, 537 (3d Cir. 2008).

3

Regarding the potential for *ex parte* communications, Reardon suggests the email regarding his previous activities at the courthouse evidences the possibility that the CSOs and/or U.S. Marshals communicated with the undersigned regarding Reardon on other occasions. The Court does not recall any such communications and finds the possibility too attenuated to justify recusal. The subject email, however, constitutes actual communication which could create an objective appearance of impartiality. The email is a key distinction between this case and the jurisprudence recognizing that an ordinary working relationship with security personnel does not support recusal. The email and the attached reports depicted Reardon as a suspicious individual of which judges and their staff should be aware. Importantly, this alert materialized before the August 25, 2025 incident at the heart of this proceeding. As such, an objective and reasonable observer could believe the undersigned is predisposed to find Reardon guilty of the offense later charged. Of course, the undersigned is confident that no actual prejudice, bias, or predisposition to find Reardon guilty exists, but the determinative factor is one of appearance.

*In re Nettles*, 394 F.3d 1001 (7th Cir. 2005) is instructive. In that case, the court considered disqualification of judges in the courthouse which the defendant had threatened to bomb. Although the courthouse was not in actual danger (the defendant had purchased bomb supplies from undercover agents), the court found

("with reluctance") that recusal was nonetheless warranted based on the appearance that the judges' decisions might be affected by the defendant's conduct:

> Of course the actual threat to the Dirksen Courthouse was nil because Nettles' accomplices were federal agents. But the next time he might be more careful and succeed in his aim. A reasonable observer would think that a judge who works in the Dirksen building would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants. It is true that if Nettles is innocent, and therefore not a threat, the judge's incentive to convict him would be eliminated or at least attenuated. But (it might appear to the reasonable, but outside, observer of the judicial system) a judge might be convinced of Nettles' guilt yet concerned that a jury might acquit him, and might therefore rule against him on evidentiary and procedural issues, regardless of the merits…
>
> We do not suggest that Judge Bucklo would in fact be prejudiced against Nettles. The issue is appearances.

*Id.* at 1003.

Likewise, in this case, an objective observer of the judicial system might see the appearance that any judge in the Shaw Courthouse who received the email warning of Reardon would be predisposed to find him guilty. This Court is not, in fact, prejudiced against Reardon and maintains the utmost impartiality in all proceedings. Indeed, this impartiality dictates that the possibility of the appearance of partiality warrants recusal.

Reardon requests that the matter be reassigned to another district; however, the Court finds that reassignment to another division within the Western District will cure any perception of impartiality. Reardon's activities occurred only at the Shaw

5

Courthouse in Lafayette, and only Lafayette judges received the email regarding his earlier activities.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion requesting recusal and refers the case to the Clerk of Court for reassignment to another division within the Western District.

THUS DONE in Chambers, Lafayette, Louisiana on this 12th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE