UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | CASE NO: | 6:25-MJ-00153 |
| | | 6:25-CR-00227-CBW-1 |
| VERSUS | | |
| | MAGISTRATE JUDGE LEBLANC | |
| MATTHEW REARDON | | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY FROM GOVERNMENT

NOW INTO COURT, through undersigned counsel, comes the defendant herein, Matthew Reardon, who moves this honorable Court to order the government to produce discovery previously requested by the defense for the following reasons:

I.   Background

On August 26, 2025, Mr. Reardon was charged with a petty offense via a Bill of Information containing one count of loitering, exhibiting disorderly conduct or exhibiting other conduct on federal property in violation of 41 C.F.R. § 102-74.390. Doc. No. 3. The government alleges that Mr. Reardon created loud or unusual noise or a nuisance and unreasonably obstructed the usual use of entrances at the John M. Shaw United States Courthouse in Lafayette, Louisiana on August 25, 2025. *Id.*

Mr. Reardon first appeared before this Court on August 26, 2025, and trial is presently set for December 16, 2025. Docs. No. 7, 15. Mr. Reardon filed a written discovery request on September 3, 2025. Doc. No. 12. On September 8, 2025, Mr. Reardon sent a letter requesting preservation of evidence and a separate letter

1

containing specific discovery requests related to the unique nature of this offense involving alleged conduct on the courthouse steps. <u>Request for Preservation of Evidence</u>, Sept. 8, 2025, Attached as **Exhibit 1**; <u>Request for Specific Discovery</u>, Sept. 8, 2025, Attached as **Exhibit 2**. Relevant to this motion to compel, the September 8, 2025 requests specifically sought production of:

> Any and all video and audio recordings of Matthew Reardon at the John M. Shaw United States Courthouse in Lafayette, Louisiana at any time between June 1, 2025, and the present day. This includes any security camera footage, surveillance footage, or any other video or audio recordings of Matthew Reardon or the incident that formed the basis for this case. This request applies regardless of the entity that holds the rights to the footage. This request applies to all parts of the courthouse, including the interior and exterior portions where Matthew Reardon travelled. Video recordings should be produced in their native format with metadata intact, including timestamps and system information.

<u>Request for Specific Discovery</u>, request 1, Sept. 8, 2025, Attached as **Exhibit 2**.[1] These requested recordings will be referred to as "The Surveillance Footage" in this pleading.

The government produced initial discovery in the case on September 5, 2025. This discovery production did not include The Surveillance Footage showing the

---

[1] The request seeks footage from June 1, 2025 forward because Mr. Reardon has engaged in similar journalistic and expressive activities at the courthouse on multiple occasions since that date. The Surveillance Footage from these prior visits would establish that Mr. Reardon's conduct on August 25, 2025 was consistent with his previous peaceful activities at the courthouse, which the government did not previously treat as criminal. This pattern evidence is material to Mr. Reardon's defense that his conduct was lawful First Amendment activity rather than criminal obstruction. However, if the Court finds this timeframe overly broad, Mr. Reardon requests at minimum all footage from August 25, 2025.

incident that forms the basis for the charges. The government produced supplemental discovery on October 14, 2025 and October 17, 2025. These supplemental productions likewise did not include The Surveillance Footage. The only video footage produced by the government shows Mr. Reardon in the United States Marshal holding cell after his arrest. This holding cell footage does not depict any of the recorded interactions between Mr. Reardon and the court security officers or United States Marshal personnel that form the basis of the charges against him.

To date, the government has not responded to Mr. Reardon's specific written request for The Surveillance Footage, has not indicated whether such footage has been preserved, and has not asserted any reason for non-production such as security concerns, privilege, or unavailability. The government's silence on this critical discovery request, now more than two months after the initial request, necessitates this motion.

## II.  Applicable Law

Rule 16 of the Federal Rules of Criminal Procedure provides that upon the defendant's request, "the government must permit the defendant to inspect and to copy or photograph" records that are "within the government's possession, custody, or control" that "is material to preparing the defense." Fed. R. Crim. Proc. 16(a)(1)(E).

"Rule 16 is a discovery rule designed to protect defendants by compelling the prosecution to turn over to the defense evidence material to the charges at issue." *Yates v. United States*, 574 U.S. 528, 539 (2015). But a criminal defendant seeking

discovery within the government's possession must show the requested items are material to preparation of their defense against the government's case-in-chief. *United States v. Armstrong*, 517 U.S. 456 (1996).

If the government fails to comply with Rule 16, "the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. Proc. 16(d)(2).

### III. Argument

The government has failed to comply with its discovery obligations. Mr. Reardon first requested The Surveillance Footage on September 8, 2025, more than two months ago. Request for Specific Discovery, Sept. 8, 2025, Attached as **Exhibit 2**. Despite multiple discovery productions on September 5, October 14, and October 17, 2025, the government has neither produced The Surveillance Footage nor indicated whether it exists or has been preserved. Trial is set to commence on December 16, 2025, less than one month away. Without immediate access to The Surveillance Footage, Mr. Reardon cannot adequately prepare his defense, including determining whether to testify, preparing cross-examination of government witnesses based on objective evidence of the incident, and evaluating whether the footage supports additional pretrial motions. The government's opposition to Mr. Reardon's motion to dismiss indicates there will be disputed factual questions at trial regarding the

nature and location of Mr. Reardon's conduct and his interaction with Deputy United States Marshal Hayden Nugent on the courthouse steps. The Surveillance Footage is essential to resolving these factual disputes and preparing Mr. Reardon's defense.

Mr. Reardon seeks a Court order compelling production of The Surveillance Footage:

> Any and all video and audio recordings of Matthew Reardon at the John M. Shaw United States Courthouse in Lafayette, Louisiana at any time between June 1, 2025, and the present day. This includes any security camera footage, surveillance footage, or any other video or audio recordings of Matthew Reardon or the incident that formed the basis for this case. This request applies regardless of the entity that holds the rights to the footage. This request applies to all parts of the courthouse, including the interior and exterior portions where Matthew Reardon travelled. Video recordings should be produced in their native format with metadata intact, including timestamps and system information.

### A. The Surveillance Footage is discoverable because it is "material to preparing the defense" under Fed. R. Crim. Proc. 16(a)(1)(E)

#### 1. The Surveillance Footage constitutes the best evidence of what actually occurred

These requested recordings are "material to preparing the defense." Fed. R. Crim. Proc. 16(a)(1)(E). The Surveillance Footage will provide the most accurate and complete record of the incident between Mr. Reardon and Deputy United States Marshal Hayden Nugent on August 25, 2025. The charges in this case rest entirely on the government's characterization of Mr. Reardon's conduct on the courthouse steps and his interaction with Marshal Nugent. The Surveillance Footage would definitively establish what actually occurred during this interaction, including

5

whether Mr. Reardon obstructed any entrance, created any disturbance, and how he responded to Marshal Nugent's commands.

The government has provided only limited video evidence consisting of holding cell footage taken after Mr. Reardon's arrest. This footage does not show the conduct alleged in the charging documents. The government has also provided photographs and what appears to be handheld video footage, but these fragmentary recordings do not capture the complete sequence of events that led to Mr. Reardon's arrest. Without The Surveillance Footage, Mr. Reardon lacks access to the most reliable evidence of what transpired during the critical moments when Marshal Nugent confronted him.

Video evidence is often the best and most probative evidence of what occurred during an incident. In cases involving alleged criminal conduct at federal facilities, surveillance footage provides an objective record that cannot be disputed and protects both the government and the accused from inaccurate characterizations of events. Where such footage exists and captures the alleged criminal conduct, it is plainly material to the defense under Rule 16.

The Surveillance Footage is particularly material here because the charges against Mr. Reardon arise from conduct the government alleges occurred in a public area outside the courthouse while Mr. Reardon was engaged in journalistic and expressive activities. Mr. Reardon has filed a motion to dismiss on First Amendment grounds, arguing that the courthouse steps constitute a traditional public forum where his peaceful expression was constitutionally protected. Whether Mr. Reardon's

6

conduct occurred on the public steps or in a restricted area, whether he was blocking a functioning entrance or standing near a locked door, and whether he complied with law enforcement directives are all critical factual questions that bear directly on both the statutory violation and the constitutional defense. The Surveillance Footage would provide objective evidence on each of these disputed factual issues.

### 2. The Surveillance Footage is reasonably likely to contain evidence favorable to the defense

The Surveillance Footage is reasonably likely to contain evidence favorable to Mr. Reardon under *Brady v. Maryland*, 373 U.S. 83 (1963). The government alleges that Mr. Reardon "unreasonably obstructed the usual use of entrances" at the courthouse. The Surveillance Footage would show whether the entrance in question was actually in use and accessible to the public, or whether it was locked as Mr. Reardon maintains. The footage would similarly show whether any member of the public was prevented from accessing the courthouse, or whether the steps and entryway remained clear for public use throughout the incident. This objective evidence is essential to evaluating the government's obstruction claim and could directly contradict the government's theory of the case.

The charges against Mr. Reardon arise from his conduct as an investigative journalist documenting events of public concern on the courthouse steps. Mr. Reardon maintains that he was engaged in constitutionally protected activity in a traditional public forum and that he complied with law enforcement directives. The Surveillance Footage would likely show that when Marshal Nugent ordered him to move his

7

camera equipment, Mr. Reardon complied by grabbing the camera and tripod and backing away from the door. The footage would further show whether Mr. Reardon's conduct after moving away from the door continued to obstruct any entrance or whether his arrest occurred despite his compliance with the marshal's directive. Mr. Reardon has provided his own video footage of portions of this incident, but only The Surveillance Footage will capture the complete interaction from an objective vantage point, including the moments immediately before and after the confrontation.

The Surveillance Footage is essential to Mr. Reardon's ability to prepare his defense and evaluate all available evidence before trial. If the footage does contain evidence favorable to Mr. Reardon, the government's *Brady* obligations independently require disclosure.

### 3. The Surveillance Footage may contain impeachment evidence

The Surveillance Footage may constitute *Giglio* material because it could provide impeachment evidence against government witnesses. *Giglio v. United States*, 405 U.S. 150 (1972). The government's case will rest substantially, if not entirely, on testimony from Marshal Nugent and potentially other court security officers regarding Mr. Reardon's conduct and their interactions with him. The Surveillance Footage would provide an objective record against which to evaluate the accuracy and credibility of these witnesses' testimony. Such video evidence is particularly valuable for impeachment purposes because it captures events as they occurred, free from the limitations of human perception and memory.

If the witnesses' testimony at trial differs from what The Surveillance Footage depicts, this would constitute powerful impeachment evidence. For example, if witnesses testify that Mr. Reardon refused to comply with lawful orders or that he obstructed a functioning entrance, but The Surveillance Footage shows immediate compliance or depicts a locked door, this discrepancy would be highly material to Mr. Reardon's defense. Without access to The Surveillance Footage, Mr. Reardon cannot effectively cross-examine government witnesses or challenge inaccurate characterizations of his conduct. The government's duty to disclose impeachment evidence under *Giglio* applies even where, as here, the defense has specifically requested material that may contain such evidence.

B. **The government has exclusive access to The Surveillance Footage**

Mr. Reardon has no way of obtaining The Surveillance Footage absent disclosure by the government. The courthouse surveillance system is operated and controlled by the federal government through the General Services Administration, the United States Marshals Service, or private contractors working on behalf of these agencies. Only the government has access to this footage and the ability to preserve and produce it.

The government's discovery obligations under Rule 16 extend to materials within its "possession, custody, or control." Fed. R. Crim. Proc. 16(a)(1)(E). The Surveillance Footage is maintained by federal agencies (GSA, USMS) or their contractors in connection with security operations at a federal courthouse where a

9

federal prosecution arose. The government plainly has the ability to obtain and produce this footage and cannot avoid its discovery obligations by asserting the footage is held by a different federal entity.

Moreover, Mr. Reardon has no independent legal mechanism to compel production of The Surveillance Footage from GSA, USMS, or their private contractors. These entities are not parties to this criminal proceeding, and civil discovery mechanisms are not available in criminal cases. The government is the sole entity with both the legal authority and practical ability to obtain and produce The Surveillance Footage. This exclusive access underscores the government's obligation to produce the material in response to Mr. Reardon's request.

Mr. Reardon sent a specific preservation request on September 8, 2025, immediately after being charged in this case, to ensure The Surveillance Footage would not be destroyed. Request for Preservation of Evidence, Sept. 8, 2025, Attached as **Exhibit 1**. This request specifically identified surveillance footage from the courthouse depicting "the front steps, front entryway, foyer, or any other area of the courthouse building or grounds that were visited by Matthew Reardon" on August 25, 2025. *Id.* The request was copied to Supervisory United States Marshal John Farrish and Clerk of Court Daniel McCoy. *Id.* Despite this early and specific preservation request and subsequent discovery demand, the government has neither produced The Surveillance Footage nor indicated whether it exists, whether it has been preserved, what the standard retention period is for such footage, or whether any security

concerns prevent its disclosure. The government's continued silence on this issue is unacceptable given the footage's obvious materiality and Mr. Reardon's prompt request for preservation and production.

If The Surveillance Footage exists and has been preserved, the government must produce it promptly to permit adequate trial preparation. If the footage was not preserved despite Mr. Reardon's timely preservation request, the government should so state, identify when and why the footage was destroyed, and explain what efforts were made to preserve it. If security concerns prevent disclosure of the footage in its entirety, the government should identify those concerns so that appropriate redactions or protective measures can be discussed with the Court. The government's complete silence provides no basis for this Court to evaluate the legitimacy of non-production.

## IV. Conclusion

WHEREFORE, Mr. Reardon respectfully requests that this Court:

1. Order the government to produce, within seven (7) days of the Court's order, all video and audio recordings of Matthew Reardon at the John M. Shaw United States Courthouse in Lafayette, Louisiana between June 1, 2025 and the present day, or alternatively, all such footage from August 25, 2025, including all security camera footage, surveillance footage, or other recordings of the incident that forms the basis for the charges, regardless of which federal entity or contractor holds the footage;

2. Order the government to provide, within seven (7) days, a sworn statement identifying whether The Surveillance Footage exists, whether it has been preserved, and if it no longer exists, when and why it was destroyed and what preservation efforts were made in response to Mr. Reardon's September 8, 2025 request;

3. If the government represents that The Surveillance Footage was destroyed after Mr. Reardon's preservation request, schedule a hearing on spoliation and consider appropriate sanctions, including dismissal or an adverse inference instruction;

4. Grant such other and further relief as the Court deems just and proper.

        RESPECTFULLY SUBMITTED,

        REBECCA L. HUDSMITH
        Federal Public Defender

BY: *s/ Dustin C. Talbot*
      DUSTIN C. TALBOT
      Appellate Chief
      Federal Public Defender's Office
      Middle and Western Districts of Louisiana
      102 Versailles Boulevard, Suite 816
      Lafayette, Louisiana 70501
      Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 17, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

                                                  *s/ Dustin C. Talbot*